IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE  DISTRICT OF ALABAMA
SOUTHERN DIVISION

SONCERAY THOMPSON,

    Plaintiff,

v.

WIREGRASS HOMECARE, LLC,

    Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES

COMES NOW, Sonceray Thompson ("Plaintiff"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Wiregrass HomeCare, LLC ("Defendant") for violations of her rights under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").

1

## JURISDICTION AND VENUE

### 2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 2000e-5(f), and 28 U.S.C. §§ 1343.

### 3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 42 U.S.C. §1981, venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

### 4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under the Title VII. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 21, 2025 (Exhibit A).

### 5.

Plaintiff received her Notice of Right to Sue from the EEOC on that Charge on March 10, 2026 (Exhibit B).

## PARTIES

6.

Plaintiff is a black citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant operated within and conducted business within this District without first registering itself with the Alabama Secretary of State.

8.

At all such times, Plaintiff was an "employee" of Defendant as defined under the Title VII and Section 1981. Defendant is now and, at all times relevant hereto, has been a for-profit entity engaged in an industry affecting commerce. During all times relevant hereto, Defendant had employed 15 or more employees.

9.

Defendant may be served with process via one of its owners, Thad or Allyson Johnson.

3

## <u>FACTUAL ALLEGATIONS</u>

10.

Plaintiff began working for Defendant as a Patient Care Technician in or around August 2024.

11.

On or about January 6, 2025, Plaintiff was assigned to care for a client (hereinafter "The Client.").

12.

The Client began to subject Plaintiff to racist rants and slurs, including some of the instances described below.

13.

On or about January 21, 2025, the Client began cursing at Plaintiff and called her a "nigg$#," told her that he "did not want a nigg$%" taking care of him, and told her that he did not "need a nigg$% seeing about him."

14.

Plaintiff reported this behavior to Trena Counsel, Scheduling Coordinator, including being called the n-word multiple times. She also asked to be transferred to another client.

15.

At the conclusion of the call, Counsel told Plaintiff she would speak to the Client's daughter.

16.

On or about January 28, 2025, Counsel revealed to Plaintiff that multiple other black female employees had previously refused to care for the Client and ultimately quit as a result of having to work with him because of how he talked to and treated them.

17.

On or about February 4, 2025, another employee named Chandra began working for the Client as well.

18.

Shortly after beginning working shifts with the Client, Chandra began to complain to Plaintiff that the Client was very rude, cursed at her, and made multiple comments about black women trying to come into his house to make him "do stuff."

19.

On or about March 4, 2025, the Client was hospitalized, and Plaintiff did not work for approximately two weeks.

20.

Plaintiff asked to be reassigned, but Counsel told Plaintiff that there were no other clients available.

21.

That was not true.

22.

Plaintiff was later offered to care for another client, but at a reduced rate of pay, making a false excuse as to why Plaintiff's pay would decrease so she would continue working with the Client.

23.

On or about March 14, 2025, Chandra refused to continue caring for the Client.

24.

On or about March 14, 2025, Counsel acknowledged to Plaintiff "the difficulty" of working with the Client but asked her to cover shifts caring for him because no one else would.

25.

Plaintiff reluctantly agreed to do so.

6

26.

On or about March 25, 2025, when Defendant tried to get Plaintiff to work more shifts with the Client, Plaintiff complained again to Counsel, who simply told Plaintiff not to work if she wanted to complain and that she was not asking for Plaintiff's opinion.

27.

On or about April 14, 2025, the Client told Plaintiff to get her black ass out of his house and told her she was fired.

28.

He further stated that "these black nigg$%s think they can come here and do what they want to do and talk to me how they want to."

29.

Plaintiff again reported this to Counsel and again requested to be assigned to another client.

30.

Counsel did not reassign Plaintiff to another client.

31.

In fact, Counsel simply took Plaintiff off of the schedule.

32.

On or about April 18, 2025, another employee named Catherine started to switch shifts caring for the Client with Plaintiff.

33.

On or about April 21, 2025, Catherine told Plaintiff she would not be returning to care for the Client because the Client had called her a "fat black bitch" and a nigg$%.

34.

On or about May 1, 2025, the Client was again hospitalized and Plaintiff did not work for another two weeks.

35.

Plaintiff began to care for the client again once he returned, and on the first day he returned, on or about May 8, 2025, he told Plaintiff to get her black ass out of his house.

36.

On or about May 13, 2025, the Client began to throw diapers at Plaintiff while screaming and cursing at her and while telling Plaintiff that her "black ass" would "pick up his diapers."

8

37.

Plaintiff again reported the behavior to Counsel and this time also reported it to Amber, another Supervisor. Counsel again said she would talk to the Client's daughter, even though that had absolutely not stopped the harassment.

38.

On or about May 16, 2025, the Client began calling Plaintiff a bitch and telling her that he did not want a black person touching him.

39.

Plaintiff called hospice nurse Taylor, who instructed Plaintiff to provide the Client with a dose of morphine, which she did.

40.

Plaintiff was then terminated on May 16, 2025, by Amy Kovach, Human Resources Representative, for allegedly not following instructions.

41.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Plaintiff was treated less favorably in the terms or conditions of employment than others outside of his protected class, i.e. individuals who had not been subjected to a racially hotile work

9

environment.    Additionally, despite Plaintiff's complaints, Defendant did not appropriately attempt to rectify the situation, and instead terminated Plaintiff's employment because of her complaints.

## CLAIMS FOR RELIEF

## COUNT I:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

42.

Plaintiff re-alleges paragraphs 10-41 as if set forth fully herein.

43.

Plaintiff engaged in protected activity when she complained of racial harassment, including being called racial slurs.

44.

Defendant retaliated against Plaintiff by terminating her employment as a result of Plaintiff's protected activity.

45.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide its retaliatory motive.

46.

Defendant's retaliatory actions against Plaintiff were in violation of Title VII

10

47.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its retaliation against Plaintiff was undertaken in bad faith.

48.

As a result of Defendant's retaliatory actions against Plaintiff, Plaintiff has suffered lost compensation and benefits.

49.

Pursuant to Title VII, Plaintiff is entitled to damages and relief including but not limited to back pay and lost benefits, emotional distress, reinstatement, equitable relief, attorneys' fees, costs of litigation, and all other relief recoverable under Title VII.

**COUNT II:  RETALIATION IN VIOLATION OF SECTION 1981**

90.

Plaintiff repeats and re-alleges the allegations contained in paragraphs 10-41 as if set forth fully herein.

94.

At all times relevant to this action, Defendant and all individuals involved in the decision to terminate Plaintiff were aware of Plaintiff's reports of racial harassment, including at the time of Defendant's termination of Plaintiff.

95.

Plaintiff engaged in protected activity under Section 1981 when she reported that he was being harassed based on her race and when she reported being subjected to continuous use of anti-black slurs.

97.

Plaintiff was terminated for her protected activity.

98.

In terminating Plaintiff because of her protected activity, Defendant violated Plaintiff's rights under Section 1981, entitling her to all appropriate relief thereunder.

99.

As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress and other non-pecuniary damages, as well as economic damages, for which she is entitled to recover from Defendant.

100.

Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights. Plaintiff seeks punitive damages as a result of Defendant's violations of the ADA.

## COUNTS III AND IV: DISCRIMINATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII AND SECTION 1981

12

101.

Plaintiff repeats and re-alleges the allegations contained in paragraphs 10-41 as if set forth fully herein.

102.

Plaintiff was harassed because of her race.

103.

The harassment Plaintiff was subjected to on the basis of her race was severe and pervasive.

104.

Plaintiff reported the race-based harassment to management numerous times.

105.

However, Defendant failed numerous times to take prompt and appropriate remedial action to remedy the harassment, and so it continued.

106.

The harassment altered the terms and conditions of Plaintiff's employment and created a hostile work environment for her because of her race.

107.

13

Plaintiff suffered damages because of the hostile work environment, including loss of pay, termination of her employment, benefits, and mental anguish.

108.

Defendant exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

109.

Plaintiff thus seeks punitive damages.

 **WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

(a)    General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)    Special damages for lost wages and benefits and prejudgment interest thereon;

(c)    Punitive damages;

(d)    Reasonable attorney's fees and expenses of litigation;

(e)    Trial by jury as to all issues;

(f)    Prejudgment interest at the rate allowed by law;

(g)    Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(i)     Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting

Defendant from further unlawful conduct of the type described herein; and

(j)     All other relief to which she may be entitled.

This 2nd day of June, 2026.

**JURY TRIAL DEMANDED**

/s/ *Kira Fonteneau*

Kira Fonteneau

V. Severin Roberts
Georgia Bar No. 940504
*Pro Hac Vice Application
Forthcoming*
Patrick Reid
Georgia Bar No. 888769
*Pro Hac Vice Application
Forthcoming*

**OF COUNSEL:**

The Workers' Firm, LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
(404) 382-9660
kira@theworkersfirm.com

The Workers' Firm
7000 Central Parkway, Suite 1000
Atlanta, GA 30328
(404)-382-9660
severin@theworkersfirm.com
patrick@theworkersfirm.com

15

## PLEASE SERVE DEFENDANT AS FOLLOWS

Wiregrass HomeCare, LLC
c/o Thad or Allyson Johnson
172 Honeysuckle Rd. Ste. 2
Dothan, Alabama 36305

16